DANIEL J. O'HERN, JR., ESQ. (D0138)
BECKER MEISEL LLC
The Galleria
Building One, Second Floor
2 Bridge Avenue
Red Bank, New Jersey 07701
(732) 576-8700
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORTEL NETWORKS LIMITED, a Canadian Corporation, and NORTEL NETWORKS INC, a Delaware Corporation, | |
| Plaintiffs, | Civil Action No. 01- |
| v. | |
| ADVANCE TELECOM RESOURCES, INC., a New Jersey Corporation, JOSEPH NOTARANGELO, A1PHONES, HOSSAM HASSAN and HOSNIA MOHAMED, | **VERIFIED COMPLAINT** |
| Defendants. | |

Plaintiffs Nortel Networks Limited and Nortel Networks Inc., by way of Complaint against defendants Advance Telecom Resources, Inc., Joseph Notarangelo, A1Phones, Hossam Hassan and Hosnia Mohamed says:

## JURISDICTION AND VENUE

1. This is an action for infringement of copyright pursuant to 17 U.S.C. § 101 *et seq.*; and for related claims of unfair competition, misappropriation of trade secrets, conversion and interference with economic advantage relations. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and (b), and this Court's pendent jurisdiction. Venue is proper in this district under 28 U.S.C. §§ 1391(b).

## PARTIES

2. Plaintiff, Nortel Networks Limited ("NNL"), is a company organized and existing under the laws of Canada.

3. Plaintiff Nortel Networks Inc. ("NNI"), is a company organized and existing under the laws of Delaware. NNI is registered to do business in the State of New Jersey.

4. Defendant Advance Telecom Resources, Inc. ("Advance Telecom") is a New Jersey Corporation with its principal place of business located at 141 Ethel Road West, Piscataway, New Jersey 08854.

5. Defendant Joseph Notarangelo ("Notarangelo") is a resident of the State of New Jersey residing at 41 Ridge Avenue, Sayreville, New Jersey 08872. Mr. Notarangelo is Advance Telecom's Registered Agent.

6. Upon information and belief, defendant A1Phones ("A1) is a New Jersey based business located at 1480 Route 46 West, Apartment 248A, Parsippany, New Jersey 07054.

7. Upon information and belief, defendant Hossam Hassan ("Hassan") is a principal of A1Phones and a resident of the State of New Jersey, currently residing at 9 Mariner Road, Hopatcong, New Jersey 07843.

8. Upon information and belief, defendant Hosnia Mohamed ("Mohamed") is a principal of A1Phones and a resident of the State of New Jersey.

## FACTS

9. NNI is the United States subsidiary of NNL. (NNL and NNI are hereinafter collectively referred to as "Nortel").

10. Nortel is an industry leader and innovator in the field of global telecommunications, and conducts business in more than 150 countries.

11. Nortel's core products include telecommunication systems for business users. For example, two of Nortel's most innovative and successful products are (a) Nortel Networks Norstar, which supports up to 240 telephones, and has an ability to drive multiple integrated applications (the "Norstar Product"), and (b) Business Communications Manager, which has achieved the top North American market share in its category ("BCM").

12. BCM is an all in one voice and data solution for small to mid-size businesses, which delivers voice and data networking over a single platform.

13. Many applications of Norstar Product and BCM are sold on the basis of channels (also referred to as ports). A purchaser of BCM, for example, would have a base number of ports that would allow a certain number of persons to use the system, e.g. forty phones in an office that are all integrated into one system that has various functions. As the ports or functions increase, the cost of the system would also increase.

14. A most valuable feature of the Nortel products is that they can be expanded to handle more users and functions. This allows a business to buy a base telecommunications system that can grow and expand as the company grows. There would be no need to incur

the expense of a new system or the disruption to a growing business that the installation of new and unfamiliar telecommunications system might cause.

15. So as a business expands, it can simply contact one of Nortel's authorized distributors to expand and enhance the existing system for a fee. NNL's copyrighted GenKey Application Software (the "GenKey Software") generates keycodes (the "Nortel Keycodes") that activate the new ports on the hardware or expand the system's features.

**The GenKey Software Is A Proprietary Software Owned By NNL And Protected By Registered Copyright.**

16. The GenKey Software is owned by NNL and is protected by a registered copyright under Canadian copyright law. The GenKey software is crucial to the viability of Nortel's telecommunications products and software based profit model. Without GenKey, the users of Nortel products would not be able to expand or enhance their systems. Nortel's systems are designed to respond to and be activated by the Nortel Keycodes, which are generated by the GenKey software. It is with the authorized use of the Keycodes that Nortel and its authorized distributors are able to expand and enhance Nortel's products for existing business users. These expansions and enhancements are major revenue sources for Nortel.

17. Because the unique, valuable and proprietary nature of the GenKey Software, the use of the GenKey Software is strictly prohibited for use by anyone outside of Nortel or its subsidiary Nortel Networks Technology Corporation ("NNTC"). Thus, any Nortel or NNTC employee or agent is who is given access to the GenKey Software is bound by a confidentiality agreements that they are required to sign upon commencing employment at Nortel, including (1) the Nortel Networks Agreement Relating to Intellectual Property and

Confidentiality, or (2) the NNTC Agreement Relating to Intellectual Property and Confidentiality.

**Nortel Discovers A Sale Of An Unauthorized Copy Of The GenKey Software.**

18. April 13, 2004, Nortel was contacted by Duncan Robertson ("Robertson") of Scottel Voice Data, Inc. ("Scottel"). Scottel is an authorized distributor of Nortel voice and data products.

19. Robertson contacted Nortel to explain that he had been contacted by Bruce Jensen ("Jensen"). Jensen told Robertson that he had a connection in Canada who had software that could generate the Nortel Keycodes. Robertson did not want to illegally purchase the GenKey Software, nor did he want his competitors, who are also Nortel distributors, to achieve an unfair advantage over Scottel.

20. On April 28 2004, Robertson received calls and voicemails from a person named David Perrin, Jensen's contact from Canada, who offered to sell Robertson his copy of Nortel's keycode generator software ("Application X"). Robertson did not return these calls because he wanted to speak with Nortel's security personnel before he spoke with Perrin.

21. On April 30, 2004, Robertson spoke with Kevin McGuire ("McGuire"), Senior Manager of Investigative Services and Corporate Security at Nortel. Between April 30 and May 7, Robertson and McGuire had several conversations during which they agreed that Robertson, with the approval of Nortel, would accept Perrin's offer to sell him Application X.

22. On May 3, 2004, Robertson called Perrin to ask about Application X and its ability to expand the number of channels and features on Nortel's products. Through a series of

emails and telephone conversations, Robertson and Perrin negotiated the price and terms for the purchase by Robertson of Application X.

23. On May 5, 2004, Perrin agreed to sell to Robertson Application X for $35,000.00, to be paid in installments. Perrin planned to deliver by Federal Express Application X to Robertson at his office in Culver City, California. McGuire instructed Robertson to go purchase a copy of Application X. McGuire also confirmed that Nortel would reimburse Robertson for the payment for Application X.

24. Later that day, Perrin called Robertson to change delivery plans. Perrin was concerned about scanning the package at the border and the potential for damaging the software with this process. Perrin told Robertson that he would send Application X by e-mail. Robertson told McGuire of the change in delivery plans, and McGuire arranged for a private investigator to secure Application X after its delivery to Robertson.

25. On May 6, 2004, Robertson wired the first installment payment of $15,000 to Perrin. Robertson also sent a confirmation of the receipt of these funds to McGuire. On May 8, 2004, Robertson learned from an associate that he had received a copy of Application X from Perrin by e-mail.

**Application X Is An Unauthorized Copy Of The GenKey Software.**

26. When Robertson's associate received Application X by e-mail, he made five copies (three copies on CD-Rom and two on floppy disks).

27. In addition, Application X was zipped, encrypted and sent by file transfer protocol to Zenon Slodki ("Slodki"), Nortel's senior designer responsible for keycodes and security, so

that Jonathan Tweedie ("Tweedie"), a software designer at Nortel, could compare Application X to the GenKey Software. After a thorough analysis, Slodki and Tweedie both determined that Application X was an identical copy of the GenKey Software.

**Perrin, the Canadian source of Application X, Admits That He Purchased And Sold Unauthorized Copies Of GenKey Software to defendant Advance Telecom**

28. On June 28, 2004, Nortel secured an Anton Piller Order in the Federal Court of Vancouver, British Columbia. An Anton Piller Order is a special type of injunction which is granted, in the discretion of the Canadian court, when there is a real risk that a party may dispose of the infringing items and documents relating to his infringing activities. With the Anton Piller Order, Nortel's attorneys were able to, in addition to granting an injunction against Perrin, enter his premises and look for, inspect and take away any infringing items and documents relating to his alleged infringing acts.

29. On June 29, 2004, Perrin was served with the Anton Piller Order and interviewed by an attorney for Nortel, Daniel Drapeau ("Drapeau"). During the interview, and some additional and subsequent communications, Perrin advised Drapeau, among other things, that (1) Perrin sold to Robertson an unauthorized copy of the GenKey Software that he had previously purchased from Platinum Networks; and (2) Perrin purchased the unauthorized copy of the GenKey Software from Platinum Networks for $12,500.00; and (3) Platinum Networks bought the unauthorized copy of the GenKey Software from an individual who had previously obtained it from a Nortel employee.

30. On September 8, 2004, Perrin signed an affidavit before a Canadian Commissioner for the taking of Affidavits in the Federal Court of Canada (the "Perrin Affidavit"). Perrin

swore in his affidavit that he sold another copy of the GenKey Software to a representative of Advance Telecom, Joseph Notorangelo, for the price of Forty Thousand Dollars ($40,000).

**Nortel Purchases The Nortel Key Codes From A1Phones.**

31. As a result of the Perrin Affidavit and the unauthorized sales in California, Nortel commenced its own investigation to evaluate the scope and extent of the distribution of the unauthorized copies of the GenKey Software. McGuire retained the services of a private investigator, Glencastle Security ("Glencastle"), to conduct an internet search to ascertain if any unauthorized dealers of Nortel product were advertising the sale of Nortel Keycodes.

32. Glencastle's search identified several companies that were advertising Nortel Keycodes, including A1Phones. A1Phones is not a Nortel authorized dealer.

33. Glencastle identified A1Phones because their web site (www.A1Phones.com) indicated that they specialized in the sale of BCM codes. A1Phones' website also contained specific references to BCM codes and Call Pilot codes. Call Pilot is a multimedia communications solution sold by Nortel that organizes faxes, voice mail, and e-mail.

34. The A1Phones website also raised suspicions because it lacked the normal contact information found on the website of a reputable business, such as the company address and phone number. A1Phones can only be contacted by e-mail at sales@A1Phones.com

35. Glencastle confirmed that A1Phones domain name was registered by Hosnia Mohamed ("Mohamed"). The address provided for the domain registration is 1480 Route 46 West, Apartment 248 A, Parsippany, New Jersey 07054.

36. In light of these findings, McGuire authorized Glencastle to obtain further information on A1Phones and Mohamed.

37. On November 8, 2004, Glencastle contacted A1 Phones by e-mail to inquire about the purchase of a Norstar BCM 16 seat Silver Bundle authorization code ("Silver Bundle"). Glencastle requested that A1Phones provide their best price for the Silver Bundle and informed them that the code was needed for a new BCM that had been purchased from an unauthorized dealer that could not provide authorization codes.

38. A1Phones responded to Glencastle by e-mail advising that they had three Silver Bundles in their price list, and requested additional information from Glencastle. A1Phones did not seem to know what options were contained within the Silver Bundle, which is something that an authorized Nortel deal would know.

39. Glencastle and A1Phones eventually agreed on the Silver Bundle to be purchased, and A1Phones advised that the price for the Silver Bundle was $1,200. A1Phones also advised Glencastle that they only accepted PayPal[1] for payment, and would not accept a credit card.

40. On December 9, 2004, Glencastle ordered the Norstar 16 Seat Silver Bundle from A1Phones. A payment of $1,100.00[2] was made to A1Phones through PayPal.

41. Glencastle then received an e-mail from A1Phones requesting the serial number for the Norstar BCM system for which it had ordered the Silver Bundle. Glencastle provided the serial number to A1Phones, and A1Phones provided Glencastle with the Silver Bundle by e-mail.

42. Glencastle provided McGuire with the Silver Bundle purchased from A1Phones.

---

[1] PayPal is a secure on-line service owned by EBay that facilitates payments for internet transactions.

[2] Glencastle negotiated the lower purchase price.

43. The price that Glencastle paid for the Silver Bundle is substantially below (approximately 50% less) the wholesale price that Nortel charges authorized dealers for this item.

44. McGuire verified with Ricky Stevens ("Stevens")(the person responsible for Nortel's proprietary key retrieval system) that the Silver Bundle purchased from A1Phones was not generated legitimately through Nortel's authorized distribution channels. McGuire also provided the Silver Bundle to Slodiki who attempted to reverse engineer the codes to determine if they would work on Nortel's systems.

45. Slodiki was unable to confirm if the Silver Bundle would work on the Nortel's systems, and McGuire authorized the purchase of a second code from A1Phones.

46. On July 7, 2005, Glencastle purchased a second Silver Bundle at a negotiated price ($625.00) substantially below the wholesale price that Nortel charges authorized dealers for this item. Stevens confirmed that the second Silver Bundle was also not generated legitimately through Nortel's authorized distribution channels.

47. McGuire provided the second Silver Bundle acquired from A1Phones to Slodiki who determined that it activated the functionality in the BCM for which the serial number was provided.

48. Glencastle also further investigated Mohamed. Mohamed's last known address is 9 Mariner Road, Hopatcong, New Jersey 07843. Mohamed, however, is not the owner of record of this property. The owner is Hossam Hassan ("Hassan").

49. Hassan has a website (www. samhassan.com) that has the same domain registration address as that of A1Phones. Hassan's website offers to its members, who must join for a fee, various Nortel technical manuals.

50. Glencastle also entered a membership area on Hassan's website where one can subscribe to obtain information on software products for sale. This area of the website offered for sale certain Nortel Keycodes at prices starting at $99.00.

## FIRST COUNT

### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

51. Nortel re-alleges each and every allegation set forth in Paragraphs 1 through 50, inclusive, and incorporates them by this reference herein.

52. NNL's copyrighted GenKey Software is entitled to protection under the copyright laws of the United States pursuant to the Berne Convention, of which the United States and Canada are members. By means of the actions complained of herein, defendants have infringed and will continue to infringe Nortel's copyrights in and relating to the GenKey Software, by producing, distributing, and placing upon the market products or portions thereof which were copied from Nortel's copyrighted GenKey Software.

53. Nortel is entitled to an injunction restraining defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further such acts in violation of the copyright laws.

54. Nortel is further entitled to recover from defendants the damages it has sustained and will sustain as a result of defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time. Nortel is also entitled to recover from

defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged. Nortel is unable to ascertain at this time the full extent of the gains, profits, and advantages defendants have obtained by reason of their aforesaid acts of copyright infringement.

## SECOND COUNT

### Unfair Competition (N.J.S.A. 56:4-1 *et seq.*)

55. Nortel re-alleges each and every allegation set forth in Paragraphs 1 through 54, inclusive, and incorporates them by this reference herein.

56. Defendants' aforesaid conduct is act of unfair competition under New Jersey's common law and a violation of New Jersey Unfair Competition law, which is codified at N.J.S.A. 56:4-1.

57. These wrongful acts have proximately caused and will continue to cause Nortel substantial injury, including loss of customers, dilution of its goodwill, confusion for potential customers, injury to its reputation, and diminution in value of its confidential information and other proprietary information. These actions will cause imminent irreparable harm and injury to Nortel, the amount of which will be difficult to ascertain, if they continue. Nortel is without an adequate remedy at law.

58. Nortel is entitled to an injunction restraining defendants, their agents, employees, and all persons acting in concert with them from engaging in further such unlawful conduct.

59. Nortel is further entitled to recover from defendants the damages it has sustained and will sustain as a result of defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time. Nortel is also entitled to recover from

Defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged. Nortel is unable to ascertain at this time the full extent of the gains, profits, and advantages defendants' have obtained by reason of their aforesaid unlawful conduct.

60. The conduct of defendants was fraudulent, oppressive, malicious, and in conscious disregard of the rights of Nortel, and Nortel is therefore entitled to punitive damages against them.

## THIRD COUNT

## MISAPPROPRIATION OF TRADE SECRETS

61. Nortel re-alleges each and every allegation set forth in Paragraphs 1 through 60, inclusive, and incorporates them by this reference herein.

62. Because the GenKey Software contains information which is not generally known to the public or to other persons who can obtain economic value from its disclosure or use, is the subject of efforts by Nortel to maintain its secrecy, and derives independent economic value from not being generally known, such information constitutes "trade secrets".

63. Defendants misappropriated Nortel's trade secrets by acquiring those trade secrets when they knew or should have known that the trade secrets were being acquired from an individual or entity who owed a duty to Nortel to maintain the secrecy of its trade secrets or limit their use, or who acquired Nortel's trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use, and by disclosing or using Nortel's trade secrets without its implied or express consent.

64. By reason of the foregoing acts and conduct of Defendants, Nortel will suffer great and irreparable harm and damage, which damage will be difficult to ascertain, and Nortel will be without an adequate remedy at law.

65. Nortel is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in further such unlawful conduct and from reaping any additional commercial advantage from their misappropriation of Nortel's trade secrets.

66. Nortel is further entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time. Nortel is also entitled to recover from Defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged. Nortel is unable to ascertain at this time the full extent of the gains, profits, and advantages Defendants have obtained by reason of their aforesaid unlawful conduct.

67. Defendants' acts of misappropriation were both willful and malicious, and therefore Nortel is entitled to exemplary damages against both of them.

**FOURTH COUNT**

**CONVERSION**

68. Nortel re-alleges each and every allegation set forth in Paragraphs 1 through 67, inclusive, and incorporates them by this reference herein.

69. By reason of the foregoing acts and conduct, Defendants have unlawfully and wrongfully converted for their own use the GenKey Software and Keycodes belonging to

Nortel for purposes of selling or distributing unauthorized copies of the GenKey Software or the Nortel Keycodes.

70. As a direct and proximate result of the unlawful conversion of the GenKey Software and the Nortel Keycodes, Nortel has been damaged in an amount not yet fully ascertained, but which is not less than $75,000.00.

71. In doing the acts alleged herein, Defendants are guilty of oppression, fraud and malice, and have acted in conscious disregard of Nortel's rights, entitling Nortel to recovery punitive damages in an amount to be established at trial.

**FIFTH COUNT**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

72. Nortel re-alleges each and every allegation set forth in Paragraphs 1 through 71, inclusive, and incorporates them by this reference herein.

73. By their actions, defendants have tortiously interfered with Nortel's prospective economic advantage.

74. As a direct and proximate result of the defendants' tortious conduct, Nortel has been damaged in an amount not yet fully ascertained, but which is not less than $75,000.00.

**PRAYER FOR RELIEF**

**WHEREFORE**, Nortel prays for judgment against defendants as to all counts of its complaint as follows:

a. That defendants each be held to have infringed Nortel's copyrights in the GenKey Software.

b. That defendants each be held to have committed acts of unfair competition under New Jersey's common law and statutory law ( N.J.S.A. 56:4-1, et seq.)

c. That defendants each be held to have misappropriated Nortel's trade secrets.

d. That defendants each be held to have unlawfully converted the GenKey Software.

e. That defendants' directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, including but not limited to Hassan, Mohamed and Notarangelo, be enjoined from directly or indirectly infringing Nortel's copyrights in the GenKey Software or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the GenKey Software or to participate or assist in any such activity.

f. That defendants' directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, including but not limited to Hassan, Mohamed and Notarangelo be enjoined to return to Nortel any originals, copies, or duplicates of the GenKey Software or the Nortel Keycodes, in any form, in their possession, custody or control.

g. That defendants each be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment

herein, all originals, copies, or duplicates of any work shown by the evidence to infringe any Nortel copyright.

h. That judgment be entered for Nortel against defendants for Nortel's actual damages according to proof, and for any additional profits attributable to infringements of Nortel's copyrights.

i. That judgment be entered for Nortel and against defendants for statutory damages based upon defendants' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

j. That defendants each be required to account for all gains, profits, and advantages derived from their acts of infringement and for their other violations of law.

k. That all gains, profits, and advantages derived by defendants from their acts of infringement and other violations of law be deemed to be in a constructive trust for the benefit of Nortel.

l. That judgment be entered for Nortel and against defendants, for trebling of the damages award.

m. That Nortel be awarded punitive and exemplary damages against defendants.

n. That Nortel have judgment against defendants for its costs and attorneys' fees.

o. That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.

**BECKER MEISEL, LLC**
Attorneys for Plaintiffs

By: ______________________
DANIEL J. O'HERN, JR

DATED: August 22, 2005

## DEMAND FOR JURY TRIAL

The plaintiffs hereby demand a trial by jury on all issues so triable before a jury.

**BECKER MEISEL, LLC**
Attorneys for Plaintiffs

By: ______________________
DANIEL J. O'HERN, JR

DATED: August 22, 2005

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that the within matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated and I know of no other parties who should be joined in this action at this time.

**BECKER MEISEL, LLC**
Attorneys for Plaintiffs

By: ______________________
DANIEL J. O'HERN, JR

DATED: August 22, 2005

**VERIFICATION OF COMPLAINT**

KEVIN McGUIRE, of full age, certifies as follows:

1. I am the Senior Manger of Investigative Services and Corporate Security for Nortel Networks Limited.

2. I have reviewed the verified Complaint in this matter and state that the factual allegations contained therein are true and correct. As to those allegations stated upon information and belief, I believe same to be true.

3. I further certify that if any of the allegations contained therein are willfully false, I am subject to punishment.

KEVIN McGUIRE

Dated: Aug 10/05

S:\Docs\Becker Meisel\NORTEL NETWORKS, INC\PLEADINGS\NORTEL - Vertified Complaint V 3 doc